Dax R. Watson [No. 020054]
**MACK DRUCKER & WATSON, P.L.C.**
3200 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
Telephone: (602) 778-9900
Facsimile:  (602) 778-9947

*Attorneys for Plaintiffs*

docket@mackazlaw.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MH INVESTMENTS, LLC, an Arizona limited liability company; JUDD HERBERGER, as an individual.<br><br>Plaintiff,<br><br>v.<br><br>CHARLES ROBERT MCKEE, a married man, and JANE DOE MCKEE,<br><br>Defendants. | CASE NO. _____<br><br><br>**COMPLAINT** |

Plaintiffs MH Investments, LLC and Judd Herberger hereby allege the following for their Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1. MH Investments is an Arizona limited liability company and Judd Herberger is an Arizona resident.

2. Charles Robert McKee is a Louisiana resident.

3. Jurisdiction is appropriate under 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy exceeds $75,000.

1

4.	Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

**Background and Facts**

*Organization of Seaway*

5.	This suit arises, in part, out of McKee's solicitation and sale of membership interests in Seaway Midstream Assets LLC ("Seaway"), an entity that he was solely responsible for organizing in 2002. Specifically, it arises out of McKee's breach of a Settlement, Release and Membership Interest Purchase Agreement.

6.	McKee organized Seaway in 2002 by filing articles of organization (the "Articles") and an initial report (the "Initial Report") with the Louisiana Secretary of State.

7.	The Initial Report identified McKee as the sole member, but not as a "first manager."

8.	The Initial Report's failure to identify McKee or any other person as a "first manager" is inconsistent with the operating agreement (the "Operating Agreement") that he concurrently executed for Seaway as its sole member.

9.	Specifically, the Operating Agreement that McKee executed concurrently with the Articles and Initial Report provides that "[t]he business and affairs of the Company shall be managed by Managers, who shall be elected by the Members and shall serve at their pleasure thereafter."

10.	Upon organizing Seaway in 2002, McKee immediately began to act as its first and only manager.

. . .

2

11.     Since organizing Seaway in 2002, McKee has and continues to act as Seaway's only manager.

12.     As Seaway's only manager, McKee is exclusively responsible for filing Seaway's annual reports and keeping its records and information pursuant to LSA-R.S. 12:1308.1 and 12:1319, respectively.

13.     McKee subsequently prepared a second operating agreement (the "Second Operating Agreement") without the knowledge or approval of the Members.

14.     The Second Operating Agreement expanded McKee's authority as manager.

15.     The Second Operating Agreement was signed by Dennis Marceaux ("Marceaux") and purportedly dated December 29, 2006.

16.     Marceaux, however, did not become an employee of Seaway until 2008 and, at that time, was never a member of Seaway.

17.     Upon information and belief, McKee back-dated the Second Operating Agreement to create the appearance that actions he was taking without the Members' knowledge or approval were legitimate when they were ultra vires.

### *Business Activities of Seaway and McKee*

18.     Upon information and belief, McKee organized Seaway with the intention of soliciting and selling membership interests, through which capital would be raised to finance Seaway's research and development of what McKee referred to as "proven and patented" technologies.

. . .

19. These "proven and patented" technologies involved filtrating contaminants and other unwanted elements from different substances and materials, such as water, oil, and animal waste.

20. The reclaimed materials then could be reused and/or sold for profit.

21. McKee holds himself out as having substantial experience in matters relating to investments in general and these technologies in particular.

22. Upon information and belief, McKee is or was Managing Director & Division Head – International Corporate & Industry Services of Newcomb and Company, which specializes in investment banking and the sale of securities.

23. McKee maintains that he is "certified by the OMWC, in oil field operations, gas measurement, hazardous material handling, oil field water problems, pipeline operations, Marine vessel operations, and refinery operations."

24. In addition, McKee claims to hold an interest in a company that "trades crude oil and refined product on an international basis."

25. Prior to forming Seaway in 2002, McKee also acquired Canal Refining Company, Canal Marine Terminals, and Canal Marketing Company (collectively, "Canal"), which purportedly hold a processing agreement with a foreign refiner, operates the Welsh Oil Field and pipeline, and holds an ownership interest in various producing leases.

26. McKee also claims that Canal is the "technology owner and developer of the Sulphur Reduction Device (SRD)."

4

*McKee and the Parties entered into a Settlement Agreement*

27. Because of a dispute relating to the technology and administration of Seaway, various investors, including MH Investments, LLC, and Herberger threatened litigation against McKee and Seaway. After discussion and negotiation, MH Investments, LLC entered into a Settlement, Release and Membership Interest Purchase Agreement (the "Agreement") wherein McKee expressly agreed to purchase MH Investments, LLC's interest in Seaway for $441,666.67 and Herberger's interest in the amount of $245,833.37 on or before May 31, 2011.

28. McKee did not timely pay the required amount, or any amount, and is therefore in breach of the Agreement.

## CLAIM I

### (Breach of Contract)

29. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding allegation of this Complaint.

30. The Agreement is binding and MH Investments, LLC and Herberger fully complied with its terms.

31. McKee's failure to make the agreed upon payment by May 31, 2011 is a material breach of the Agreement.

WHEREFORE, the Plaintiffs respectfully demand judgment against Defendants as follows:

. . .

A.    Plaintiffs be awarded a monetary judgment totaling the amount of the contracted price;

B.    Plaintiffs be awarded penalties and interest as authorized by law; and

C.    That Plaintiffs be granted such other and further relief as the Court may deem appropriate, including attorneys' fees and costs.

DATED this **9th** day of November 2011.

**MACK DRUCKER & WATSON, P.L.C.**

By */S/ Dax R. Watson*
   Dax R. Watson
   *Attorneys for Plaintiff*

**ORIGINAL** of the foregoing filed via the Court's electronic filing system this **9th** day of November 2011.

*/S/ Berlinda Corpora*